FILED
2017 Mar-20  AM 09:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JESSICA R. TAYLOR,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:14-cv-01828-MHH** |
| | } | |
| **C&B PIPING, INC.,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

Jessica Taylor brings this action against her former employer, C&B Piping, Inc., alleging pregnancy discrimination in violation of Title VII and a failure to accommodate pregnancy restrictions in violation of the Americans with Disabilities Act. (Doc. 18). C&B filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court denies the motion.

## I.   STANDARD OF REVIEW

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Pursuant to Rule 8(a)(2), a complaint must contain, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a Rule 12(b)(6) motion to dismiss, a court must view the allegations in a complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).  A court must accept well-pled facts as true.  *Grossman v. Nationsbank*, *N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).

## II.    RELEVANT FACTS AND PROCEDURAL HISTORY

Ms. Taylor began working for C&B as an accounting clerk on February 7, 2012.  (Doc. 18, ¶ 5).  In July 2012, Ms. Taylor learned that she was pregnant. (Doc. 18, ¶ 7).  That month, Ms. Taylor informed her supervisor and the owners of C&B that she was pregnant.  (Doc. 18, ¶ 7).

According to Ms. Taylor, after she informed C&B that she was pregnant, she was treated differently.  (Doc. 18, ¶ 8).  Approximately 12 weeks into Ms. Taylor's pregnancy, her blood pressure spiked while she was at work.  (Doc. 18, ¶ 9).  Ms. Taylor went to a nearby fire station for treatment, where EMTs recommended that she go to the emergency room immediately.  (Doc. 18, ¶ 9).  Ms. Taylor's supervisor convinced her to return to work instead.  (Doc. 18, ¶ 9).  Later that day, Ms. Taylor's doctor directed her to go home and lay down with her feet up.  Ms. Taylor complied with her doctor's instruction.  (Doc. 18, ¶ 10).  When Ms. Taylor

returned to work the next day, C&B's office manager, Beth, "stated that Mrs. Taylor needed to stop using her pregnancy as a crutch." (Doc. 18, ¶ 11).

On September 24, 2012, Beth informed Ms. Taylor that she was getting complaints that Ms. Taylor was not sociable enough with other co-workers. (Doc. 18, ¶ 12). Beth again stated that Ms. Taylor was using her pregnancy as a crutch. (Doc. 18, ¶ 13). Ms. Taylor informed the manager, Chad, who told Ms. Taylor that there were no complaints and to ignore Beth. (Doc. 18, ¶¶ 14-15). On October 9, 2012, Beth reprimanded Ms. Taylor for talking too much and told Ms. Taylor that she needed to focus on her work. (Doc. 18, ¶ 16).

As part of her job, Ms. Taylor had to lift large file boxes and place the boxes on shelves at various levels ranging from knee-height to overhead-height. (Doc. 18, ¶ 18). During Ms. Taylor's pregnancy, she had difficulty lifting the boxes and noticed cramping and other issues that seemed related to her pregnancy. (Doc. 18, ¶¶ 19-20). On November 5, 2012, Ms. Taylor's doctor sent a letter to C&B stating that Ms. Taylor should not do heavy lifting for two weeks. (Doc. 18, ¶ 21). C&B refused to provide her help and continued to require her to lift boxes. (Doc. 18, ¶ 22). Ms. Taylor "requested help with lifting the boxes multiple times up until she went on maternity leave on February 20, 2013." (Doc. 18, ¶ 24). C&B required her to lift boxes until the day before she delivered her daughter. (Doc. 18, ¶ 23).

In planning for her return to work after maternity leave, to create a private space for her to pump breast milk, Ms. Taylor asked if she could purchase and install blinds for her office window at her own expense. (Doc. 18, ¶¶ 27-29). C&B refused, stating that if Ms. Taylor wanted to pump she could use the employee bathroom. (Doc. 18, ¶ 29).

Ms. Taylor gave birth to her daughter on February 21, 2013. (Doc. 18, ¶ 31). Ms. Taylor was on maternity leave for two months. The day that she returned from maternity leave, C&B eliminated Ms. Taylor's position and terminated her employment. (Doc. 18, ¶¶ 32-33).

Ms. Taylor filed a complaint with the EEOC on June 6, 2013, alleging discrimination based upon her pregnancy. (Doc. 18-1, p. 2-3). On June 26, 2014, the EEOC issued Ms. Taylor a right to sue letter. (Doc. 18-2).

Ms. Taylor filed her initial complaint on September 26, 2014. (Doc. 1). Ms. Taylor filed an amended complaint on July 3, 2015. In her amended complaint, she alleges that C&B discriminated against her on the basis of her pregnancy in violation of Title VII and failed to provide a reasonable lifting accommodation during her pregnancy in violation of the ADA. (Doc. 18, ¶¶ 37-58).

In its motion to dismiss Ms. Taylor's amended complaint, C&B argues that: (1) Ms. Taylor's Title VII and ADA claims are time barred; (2) with respect to her Title VII claim, Ms. Taylor has not sufficiently alleged differential treatment based

4

on her pregnancy; (3) Ms. Taylor's Title VII claim fails because the alleged denial of her request for a reasonable accommodation did not constitute an actionable adverse action; and (4) Ms. Taylor's ADA claim fails because Ms. Taylor's alleged requests for help did not seek a reasonable accommodation under the ADA. (Doc. 19).

## III.   ANALYSIS

### A.   C&B incorrectly characterizes Ms. Taylor's Title VII claim.

C&B attempts to frame Ms. Taylor's Title VII claim as a discriminatory failure to accommodate claim. (Doc. 19, pp. 5-12). C&B's reading of the complaint is too narrow. Ms. Taylor contends broadly that C&B discriminated against her because she was pregnant. She alleges that C&B not only refused to provide various accommodations that she requested but also that C&B treated her differently because she was pregnant. (*See, e.g.*, Doc. 18, ¶¶ 42, 44). She also alleges that C&B eliminated her position and fired her on the day that she returned to work from maternity leave. (Doc. 18, ¶¶ 32-33). C&B's erroneous narrow interpretation of Ms. Taylor's Title VII claim is fatal to most of C&B's arguments for dismissal.

### B.   Ms. Taylor's claims are not time barred.

A plaintiff must file an EEOC charge "within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-

5(e)(1).  "[T]he timely-filing requirement of [Title VII] erects an absolute bar on recovery for 'discrete discriminatory or retaliatory acts' occurring outside the limitations period."  *Ledbetter v. Goodyear Tire and Rubber Co.*, 421 F.3d 1169, 1178 (11th Cir. 2005) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).  Additionally, "[p]laintiffs proceeding under the ADA must comply with the same procedural requirements articulated in Title VII, including the duty to exhaust administrative remedies" and the duty to file an EEOC charge within 180 days of the alleged unlawful employment practice. *See E.E.O.C. v. Summer Classics, Inc.*, 471 Fed. Appx. 868, 869-70 (11th Cir. 2012) (citing *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1332 (11th Cir. 2000)).  Ms. Taylor filed her EEOC charge on June 6, 2013.  (Doc. 18-1, pp. 2-3).  Therefore, any claim based on a discrete incident occurring before December 8, 2012 falls outside of the statute of limitations and is time barred.

Ms. Taylor's Title VII claim is not time barred because that claim does not, as C&B argues, pertain only to a request for accommodation that Ms. Taylor made in November 2012.  Ms. Taylor's Title VII claim (and her EEOC charge) pertain to conduct that extended through April 22, 2013, the day that C&B terminated Ms. Taylor's employment.  Ms. Taylor filed her Title VII claim well within the 180-day window.

Ms. Taylor's ADA claim also is timely because she has alleged that C&B refused her requests for reasonable accommodation within the 180-day window. Under the ADA, "each discrete discriminatory act starts a new clock for filing an EEOC charge alleging that act; and time-barred acts are not actionable, even if they are related to acts alleged in a timely-filed charge." *Abram v. Fulton Cty. Gov't*, 598 Fed. Appx. 672, 675 (11th Cir. 2015) (citing *Nat'l R.R.*, 536 U.S. at 105, 110-15 (2002)). The denial of a request for a light work assignment constitutes a discrete act. *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 970 (11th Cir. 2008).

Ms. Taylor alleges the following in her amended complaint:

21. On November 5, 2012, her doctor, Dr. Dey, sent a letter to C & B stating that Mrs. Taylor should not do any heavy lifting for two weeks.

22. C & B refused to provide Mrs. Taylor any help and she continued to be required to lift the boxes.

23. C & B continued to require Mrs. Taylor to lift the boxes until February 20, 2013, which was the last day she worked before giving birth to her daughter the next day.

24. Mrs. Taylor requested help with lifting the boxes multiple times up until she went on maternity leave on February 20, 2013.

(Doc. 18). C&B argues that the only discrete instance of discrimination alleged in Ms. Taylor's amended complaint—C&B's refusal to accommodate Ms. Taylor's requested two-week lifting restriction between November 5, 2012 and November

19, 2012—is time barred.  (Doc. 19, pp. 5-9).  This initial event took place outside of the statutory period, so Ms. Taylor may not pursue a discrete ADA claim relating to that alleged failure to accommodate.  For Ms. Taylor's ADA reasonable accommodation claim to proceed, Ms. Taylor must have alleged at least one additional discrete act of discrimination that occurred within the statutory period. She has.

Ms. Taylor alleges that C&B refused her "requests for help lifting boxes up until February 20, 2013," the day before she delivered her baby.  C&B argues that

> [m]erely requesting help from coworkers to lift boxes does not constitute a request for reasonable accommodations that, if unfulfilled, is actionable under [] the ADA.  As a matter of law, such informal, unspecific requests do not put an employer on notice that an accommodation has been requested for a particular disability.

(Doc. 19, p. 8).  C&B cites for this proposition a Ninth Circuit opinion concerning a female employee's back injury and an opinion from a district court in New York in which the court found that the plaintiff "'never informed [his employer] of his diagnosis or requested specific accommodations for his alleged disability.'"  (Doc. 19, p. 8) (citing *Arroyo v. Continental Airlines, Inc.*, 173 Fed. Appx. 634 (9th Cir. 2006), and quoting *Falso v. SPG Direct*, 2008 WL 1946542, at *3 (W.D.N.Y. May 1, 2008)).

Ms. Taylor is not a female employee complaining of a back injury or a male employee who has not informed his employer of his diagnosis.  Ms. Taylor was

pregnant.  Although her condition may not have been readily apparent to her employer within the first few weeks of her pregnancy, Ms. Taylor alleges that she had to leave work because of a pregnancy complication 12 weeks into her pregnancy, and the day she returned, C&B's office manager told Ms. Taylor to "stop using her pregnancy as a crutch." (Doc. 18, p. 3).  Ms. Taylor also alleges that she provided a note from her doctor in which he restricted her from heavy lifting for two weeks. (Doc. 18, ¶ 21).  Ms. Taylor has not specifically alleged that in the weeks that followed, when she asked for help lifting boxes, she told C&B that she needed the help because she was pregnant, but the basis for the accommodation can be reasonably inferred, given the fact that Ms. Taylor was pregnant and Ms. Taylor had provided a note from her doctor restricting her lifting because she was pregnant.

The Court denies C&B's motion to dismiss pertaining to the 180-day limitations period.

## C. Ms. Taylor sufficiently alleges a Title VII claim.

C&B argues that Ms. Taylor's Title VII claim fails because she has not adequately alleged differential treatment.  (Doc. 19, p. 9).  A plaintiff who was pregnant may prove disparate treatment through indirect evidence that demonstrates that "she belongs to the protected class, that she sought accommodation, that the employer did not accommodate her, and that the

9

employer did accommodate others 'similar in their ability or inability to work.'" *Young v. United Parcel Serv., Inc.*, 135 S.Ct. 1338, 1354 (2015). To adequately state a claim under Title VII, Ms. Taylor's "complaint need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case." *See Surtain v. Hamlin Terrac Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015). "This is because *McDonnell Douglas*'s burden-shifting framework is an evidentiary standard, not a pleading requirement." *Id.* (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)).

As to differential treatment, Ms. Taylor alleges that:

26.    C & B makes reasonable accommodations for other workers who are under lifting restrictions.

. . . .

41.    C & B treated Mrs. Taylor differently than the male employees who were under medical lifting restrictions.

(Doc. 18). C&B argues that Ms. Taylor's amended complaint merely recites the differential treatment element without indicating when C&B provided other alleged accommodations, how the requests were made, what medical conditions or impairments required them, the identity of Ms. Taylor's comparators, how they were similarly situated, or how they were treated more favorably. (Doc. 19, p. 10).

As *Surtain* makes clear, a Title VII plaintiff's failure to adequately allege an element of the *McDonnell Douglas* prima facie case is not necessarily fatal to that

plaintiff's Title VII claim.  To survive a motion to dismiss on her Title VII claim, Ms. Taylor's complaint need only provide enough factual matter, taken as true, to indicate intentional pregnancy discrimination.  *See Surtain*, 789 F.3d at 1246.

Ms. Taylor alleges that she, a pregnant woman, asked for various accommodations based on her pregnancy.  She also alleges that C&B refused those accommodations and fired her on the day she returned from maternity leave.[1]  Ms. Taylor asserts that C&B treated her differently than the company did male employees who were on lifting restrictions.  Therefore, Ms. Taylor has alleged enough facts to plausibly plead intentional pregnancy discrimination.

**D.   C&B's "essential function" argument cannot be resolved at this stage of the litigation.**

Finally, C&B argues that Ms. Taylor's request for help lifting boxes during her pregnancy was not a reasonable request for accommodation because lifting boxes was an "essential function of her job."  (Doc. 19, pp. 12-14).  "Determining whether a particular job duty is an essential function involves a factual inquiry to be conducted on a case-by-case basis."  *Lucas v. W. W. Granger, Inc.*, 257 F.3d 1249, 1258 (11th Cir. 2001); *see also Agee v. Mercedes-Benz U.S. Int'l, Inc.*, 646 Fed. Appx. 870, 874 (11th Cir. 2016) ("An essential function of a job is a

---

[1] C&B also argues that the refusal of a lifting accommodation is not an actionable adverse employment action.  Even if that is true, termination is an adverse employment action.  Ms. Taylor alleges that C&B discriminated against her based on her pregnancy, and she alleges that C&B fired her the day she returned from maternity leave.  These allegations are sufficient.

fundamental duty of the position that an individual with a disability is actually required to perform, and we evaluate whether a particular function is essential on a case-by-case basis.  Substantial weight is accorded to the employer's judgment as to which functions are essential. In addition, other factors courts consider include: (1) written job descriptions prepared for interviewing applicants, (2) the amount of time spent performing the function, (3) the consequences of not requiring the employee to perform the function, and (4) past work experience of employees in similar jobs.") (citing *Lucas*, 257 F.3d at 1257-58; 29 C.F.R. § 1630.2(n)(3)).  This fact question cannot be resolved on a Rule 12(b)(6) motion to dismiss.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** C&B's motion to dismiss the amended complaint.  (Doc. 19).  The Court directs the parties to please confer and propose new scheduling deadlines within seven days.[2]

**DONE** and **ORDERED** this March 20, 2017.

_Madeline H. Haikala_

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[2] The Court sincerely apologizes to the parties for the delay in issuing this opinion.  The Court will be happy to help the parties expedite this matter.  If an early mediation may help the parties resolve the matter, the Court will appoint a judge to assist in the mediation.